IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 2, 2004 Session

## THOMAS BRANDON BOOKER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hardin County**
**No. 7674 PC     C. Creed McGinley, Judge**

_____

**No. W2003-00961-CCA-R3-PC  - Filed March 24, 2004**

_____

The petitioner appeals the Hardin County  Circuit Court's denial of his petition for post-conviction relief in which he alleged (1) ineffective assistance of counsel, and (2) due process violations as to the jury venire.  We conclude that the petitioner was not denied the effective assistance of counsel, and the petitioner's other claims have been waived.  We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Curtis F. Hopper, Savannah, Tennessee, for the appellant, Thomas Brandon Booker.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Jr., Chief Deputy District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Thomas Brandon Booker, appeals the Hardin County Circuit Court's denial of his petition for post-conviction relief in which he alleged (1) ineffective assistance of counsel, and (2) due process violations as to the jury venire.  Upon review of the record and the applicable law, we affirm the judgment of the post-conviction court denying relief.

Following a jury trial, the petitioner was convicted of second degree murder and sentenced to twenty-two years imprisonment.  This Court upheld the petitioner's conviction on direct appeal. State v. Thomas Brandon Booker, No. 02C01-9810-CC-00323, 1999 Tenn. Crim. App. LEXIS 446 (Tenn. Crim. App., at Jackson, May 6, 1999).  The petitioner filed a petition for post-conviction relief, and it was denied by the post-conviction court.

## I. Trial Proceedings

On direct appeal, this Court summarized the facts underlying the petitioner's conviction for second degree murder as follows:

> On the afternoon of December 1, 1997, the [petitioner]; the victim, Donald Davidson; Jeremy Miller; Sam Todd; and Scotty McLain congregated at the Savannah residence of Sandy Haynes, the sister of Jeremy Miller. Davidson arrived at the residence around 4:30 p.m., followed by the [petitioner's] arrival one hour later. That afternoon, the [petitioner], Davidson, and Jeremy Miller were drinking beer and peppermint schnapps and ingesting whatever prescription drugs they could find in the residence. Miller could not remember if they had used marijuana but acknowledged that "if we had it, yeah we smoked it." By early evening, Davidson had already engaged in two separate fights in which blows were exchanged.
>
> At some point, the [petitioner] gave Davidson money to purchase additional beer at a nearby convenience store. Upon discovering that the store was closed, the [petitioner] asked Davidson to return his money and Davidson refused. Tension arose between the two, however, things eventually died down. Around midnight, Jerry Miller, brother of Jeremy, arrived at the residence and found the home in disarray. Davidson had spilled food on the floor and Jerry asked him and the others to clean up their mess. As a result, Davidson and Jerry became involved in a "heated argument." The [petitioner] "stepped in and was going to take up for Jerry." Almost immediately, the [petitioner] and Davidson began to exchange blows. Davidson hit the floor and the [petitioner] jumped on top of him. Jeremy and Jerry broke up the fight. For a period of nearly ten minutes "the fight was over." The [petitioner] went into the kitchen and Davidson went into another room to "cool . . . down." Shortly thereafter, the [petitioner] emerged from the kitchen and again had "words" with Davidson saying, "Die, mother f-----, die." The two moved toward each other and the [petitioner] began "swinging." During this encounter, the [petitioner] produced a knife and stabbed Davidson multiple times. As the [petitioner] left the house, he said, "that will teach you to f--- with me."
>
> . . . .
>
> Dr. O'Brian Smith, the medical examiner, testified that the victim exhibited stab wounds to both arms, bruises to the right knuckles and abrasions to the left wrist which were all possibly defensive wounds; however, he died of multiple stab wounds to the chest all delivered contemporaneously. One of the stab wounds penetrated the heart while another penetrated the liver and continued through the diaphragm and heart. Dr. Smith stated that the victim had a blood alcohol level of .18 grams. The victim also had trace amounts of various drugs in his system including Phentermine, Valium, Cogentin, Atrophine, and Reglan. Dr. Smith further testified that the

-2-

[petitioner's] blood alcohol level was .14 grams.  The [petitioner] tested positive for Butalbital in addition to trace amounts of Valium, Phenergan, Dextromethorphan, and Prozac.

In his defense, the [petitioner] testified that he pulled Davidson off Jerry Miller and held him tightly in a "Half-Nelson."  When Davidson appeared to calm down, the [petitioner] turned Davidson loose.  Davidson then hit the [petitioner] in the mouth and a fight ensued.  The [petitioner] ended up on top of Davidson.  The [petitioner] further testified that Jerry and Jeremy began kicking Davidson while the [petitioner] was holding Davidson down.  The [petitioner] stopped fighting when the fight became three on one.  He admitted that he entered the living room with the knife and said, "he's [victim] not going to hit on me anymore."  Prior to this incident, the [petitioner] had undergone extensive surgery on his face.  He stated that he stabbed the victim because he was frightened and did not want the victim to hit him in the face anymore.

Thomas Brandon Booker, 1999 Tenn. Crim. App. LEXIS 446, at **1-6.

## II. Post-Conviction Hearing

Dr. Carl L. Sebelius, Jr.,  a professor in the area of oral and maxillofacial surgery, testified at the post-conviction hearing.  He first came in contact with the petitioner in January of 1994.  The petitioner was admitted for a shotgun wound to the face.  The petitioner underwent extensive reconstructive surgery of his jaw.  He again underwent surgery in February of 1995.  Dr. Sebelius last saw the petitioner in November of 1997.  The doctor testified that the petitioner's jaw would never be back to original strength, and a sharp blow to the face could have broken the jaw again.  During the period between the petitioner's surgery and his last visit in 1997, he missed a number of appointments.

Ted Anglin, an investigator with the public defender's office, also testified at the post-conviction hearing.  Anglin investigated the case in terms of self-defense because there was no question as to who committed the offense.  The investigator had heard that the sheriff might be a cousin to the victim's father but he did not find it to be relevant.

Trial counsel testified that he had numerous meetings with the petitioner, and they decided to pursue a theory of self-defense.  Counsel was aware that the sheriff might be the victim's cousin and that the deputy in charge of the jury was the sheriff's ex-wife.  However, nothing came up during trial to indicate that there was any influence of the sheriff or the ex-wife on the proceedings.  Additionally, the sheriff played no part in the investigation of the case.  Counsel considered ordering the medical records of the petitioner and calling one of the petitioner's doctors, Jimmy Albright, to testify.  Although Dr. Albright was not directly involved in the surgeries, he was familiar with the petitioner's case.  After learning of the petitioner's history of missed appointments, trial counsel made a tactical decision not to call Dr. Albright or seek the petitioner's medical records.  Counsel

felt that the petitioner's history of missed appointments, along with his interjecting himself into a fight that he was not originally involved in, might show apathy concerning his jaw, thereby weakening his case. Additionally, the State never contradicted that the petitioner had facial injuries. He felt that expert testimony about the petitioner's injuries or the petitioner's medical records would not have made any difference. Counsel stated that he did not object to the autopsy photos introduced by the State because they were not particularly gruesome, and he did not think that an objection would have been sustained.

The petitioner testified that he and trial counsel discussed the possibility of calling Dr. Albright. However, trial counsel advised against calling the witness because he felt it would hurt the petitioner's case. The petitioner also testified that he never denied stabbing the victim. He agreed that the only issue at trial was self-defense.

## III. Post-Conviction Court's Findings

The post-conviction court issued written findings as required and addressed each of the issues raised by the petitioner. The court found that the record does not support the petitioner's allegation that the sheriff was a first cousin of the victim. Even if he was, the sheriff's function was administrative, and he had no personal contact with any of the jurors. As to Deputy Davidson, she was previously married to the sheriff, but the relationship had ended. In any event, no evidence was presented of any impropriety on the part of the sheriff or the deputy. The court also found that trial counsel's decision not to call Dr. Albright was a tactical decision which was fully explored by counsel. The post-conviction court found that the photos complained of by the petitioner were "highly relevant" and that nothing in the record supports a conclusion that an objection to the admission of the photos would have been sustained. Accordingly, the post-conviction court denied relief.

## IV. Analysis

A. Ineffective Assistance of Counsel

The petitioner first contends that he received ineffective assistance of counsel. This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner bears the burden of proving the factual allegations that would entitle the petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law – such as whether counsel's performance was deficient or whether that deficiency was prejudicial – are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

The petitioner argues that counsel was ineffective in preparing the theory of self-defense because he did not obtain the petitioner's medical records, call the petitioner's doctor's to testify, or present adequate testimony establishing that the petitioner was in imminent fear of death or serious bodily injury because of the condition of his face. The petitioner argues that no evidence was presented by trial counsel concerning the condition of the petitioner's face. However, a review of the record reveals that the petitioner testified as to the condition of his face and his fear of being hit. Additionally, the petitioner has failed to establish that he was prejudiced by the lack of expert medical testimony or the admission of his medical records. The State never disputed that the petitioner had extensive facial damage prior to this incident. Trial counsel made an informed strategic decision not to call the petitioner's doctors to testify or introduce the petitioner's medical records. The petitioner also argues that counsel was ineffective by failing to stipulate as to the cause of death. Again, this was a strategic decision by trial counsel that we will not disturb on appeal. In

any event, there is no proof the State would have agreed to the stipulation or how a stipulation would have affected the outcome.  This issue is without merit.

The petitioner also contends that counsel was ineffective for failing to object to the autopsy photos introduced because they were cumulative and not relevant.  The photos complained of are not a part of the record before us.  The petitioner "has the burden to present this court with a record which conveys 'a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.'"  State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000) (quoting Tenn. R. App. P. 24(b)).  Without a proper record, this Court is precluded from considering the issue.  Id.  Therefore, because the petitioner has failed to provide this Court with copies of the complained of photos, we must accept the post-conviction court's finding that the photos were properly admitted.  This issue is without merit.

B.  Relation of Sheriff to Victim

The petitioner next argues that he was denied his right to a fair trial and due process because the Hardin County Sheriff was related to the victim, and the sheriff's ex-wife was in charge of the jury in this case.  The post-conviction court found that the petitioner had not established by clear and convincing evidence that the sheriff was related to the victim.  Additionally, there is nothing in the record to indicate any improper conduct on the part of the sheriff or his ex-wife or any influence they had on the jury.  In any event, we conclude that this issue could have been raised on direct appeal; therefore, it is waived for consideration.  See Tenn. Code Ann. § 40-30-106(g).

**V.  Conclusion**

We conclude that the petitioner was not denied the effective assistance of counsel.  The petitioner's other claims have been waived.  Based on the foregoing reasoning and the record as a whole, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-